UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

ATLANTICA HOLDINGS, INC., BALTICA                :
INVESTMENT HOLDING, INC., BLU FUNDS,             :
INC., Allan KIBLISKY, Anthony KIBLISKY, and      :
Jacques GLIKSBERG,                               :
                                    *Plaintiffs*, :
                                                 :
                    - against -                  :
                                                 :        No. 12-CV-8852 (JMF)
SOVEREIGN WEALTH FUND "SAMRUK-                    :
KAZYNA" JSC,                                      :
                                                 :
        a/k/a "National Welfare Fund 'Samruk     :
        Kazyna,'"                                :
                                                 :
                                    *Defendant*. :

------------------------------------------------------------------ X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
SOVEREIGN WEALTH FUND "SAMRUK KAZYNA" JSC'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

<u>**Table of Contents**</u>

Page(s)

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ............................................................................................................. 4

I.    THERE IS NO EXCEPTION TO S-K FUND'S SOVEREIGN IMMUNITY ............... 4

    A.    Plaintiffs' Claims Are Not Based on Any  Commercial Activity Carried on in the United States .................................................................................. 4

    B.    Plaintiffs Fail to Allege a Direct Effect in the United States ......................................... 8

II.    PLAINTIFFS HAVE NOT MET THEIR BURDEN UNDER *MORRISON* OF ALLEGING A SECURITIES TRANSACTION IN THE UNITED STATES ............... 12

    A.    Atlantica and Baltica Have Not Alleged That They  Acquired Their Initial Investment in a Domestic Transaction .......................................................... 12

    B.    Plaintiffs Have Not Alleged a Domestic Transaction With  Respect to Their Alleged Secondary Market Purchases.......................................................... 15

III.    PLAINTIFFS HAVE NOT ALLEGED REASONABLE RELIANCE ......................... 17

IV.    PLAINTIFFS HAVE NOT ALLEGED SCIENTER WITH PARTICULARITY ....... 19

CONCLUSION ........................................................................................................ 20

## Table of Authorities

Page

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
   677 F.3d 60 (2d Cir. 2012) ........................................................................... 12, 15

*Affiliated Ute v. United States,*
   406 U.S. 128 (1972).......................................................................................... 18

*Antares Aircraft, L.P. v. Federal Republic of Nigeria,*
   999 F.2d 33 (2d Cir. 1993) ............................................................................. 9, 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)......................................................................................... 20

*Basic Inc. v. Levinson,*
   485 U.S. 224 (1988)......................................................................................... 18

*Blass v. Capital Int'l Sec. Grp.,*
   No. 99-cv-5738, 2001 WL 301137 (E.D.N.Y. Mar. 23, 2001) ............................. 5, 6

*Cornwell v. Credit Suisse Grp.,*
   729 F. Supp. 2d 620 (S.D.N.Y. 2010) ............................................................... 15

*Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil,*
   212 F. Supp. 2d 30 (D.D.C. 2002)...................................................................... 6

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,*
   553 F.3d 187 (2d Cir. 2009) ............................................................................. 20

*Elliott Assocs. v. Porsche Automobil Holding SE,*
   759 F. Supp. 2d 469 (S.D.N.Y. 2010) ............................................................... 15

*Gosain v. State Bank of India,*
   414 Fed. Appx. 311 (2d Cir. 2011)...................................................................... 8

*Guirlando v. T.C. Ziraat Bankasi A.S.,*
   602 F.3d 69 (2d Cir. 2010)........................................................................ 9, 10, 11

*Hargrave v. Oki Nursery,*
   636 F.2d 897 (2d Cir. 1980) ............................................................................... 8

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,*
   936 F.2d 759 (2d Cir. 1991) ............................................................................. 13

*In re Merrill Lynch Auction Rate Secs. Litig.,*
   704 F. Supp. 2d 378 (S.D.N.Y. 2010) ............................................................... 18

*In re Merrill Lynch Auction Rate Secs. Litig.,*
   765 F. Supp. 2d 375 (S.D.N.Y. 2011) ................................................................. 9

*In re Satyam Computer Servs. Ltd. Secs. Litig.,*
   No. 09 MD 2027, 2013 WL 28053 (S.D.N.Y. Jan. 2, 2013).................................. 12

*In re UBS Secs. Litig.,*
   No. 07 Civ. 11225, 2011 WL 4059356 (S.D.N.Y. Sept. 13, 2011)......................... 17

*Kensington Int'l Ltd. v. Itoua,*
   505 F.3d 147 (2d Cir. 2007) ...................................................................... 6, 7, 8, 11

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    861 F. Supp. 2d 262 (S.D.N.Y. 2012) ............................................................. 17

*Morrison v. Nat'l Australia Bank, Ltd.*,
    130 S. Ct. 2869 (2010) ............................................................................... 3, 15

*Murphy v. Korea Asset Mgmt. Corp.*,
    421 F. Supp. 2d 627 (S.D.N.Y. 2005) ........................................................... 4, 7

*Palace Exploration Co. v. Petroleum Dev. Co.*,
    41 F. Supp. 2d 427 (S.D.N.Y. 1998) ................................................................. 8

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010) .............................................................. 19

*Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*,
    753 F. Supp. 2d 166 (S.D.N.Y. 2010) .............................................................. 16

*Sable v. Southmark/Envicon Capital Corp.*,
    819 F. Supp. 324 (S.D.N.Y. 1993) ............................................................. 18, 19

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) ................................................................................. 4, 5, 6

*SEC v. Amerindo Inv. Advisors, Inc.*,
    No. 05 Civ. 5231, 2013 WL 1385013 (S.D.N.Y. Mar. 11, 2013) ........................ 17

*SEC v. Benger*,
    No. 09 C 676, 2013 WL 593952 (N.D. Ill. Feb. 15, 2013) ............................ 13, 14

*Shapiro v. Republic of Bolivia*,
    930 F.2d 1013 (2d Cir. 1991) ........................................................................... 7

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ............................................................................ 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ....................................................................................... 20

*United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*,
    33 F.3d 1232 (10th Cir. 1994) ......................................................................... 10

*Virtual Countries, Inc. v. Republic of South Africa*,
    300 F.3d 230 (2d Cir. 2002) ...................................................................... 10, 11

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000) ............................................................................. 5

**Statutes**

15 U.S.C. § 78u-4(b)(1)-(3)(A) ............................................................................. 3

28 U.S.C. § 1605(a)(2) ............................................................................... passim

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 1

Fed. R. Civ. P. 12(b)(2) ......................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1

Defendant Sovereign Wealth Fund "Samruk Kazyna" JSC ("S-K Fund") respectfully submits this reply memorandum of law in support of its Motion to dismiss Plaintiffs' Amended Complaint in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

As pointed out in S-K Fund's original memorandum of law, this case involves primarily foreign Plaintiffs, a foreign state Defendant, and facts which occurred virtually exclusively outside of the United States.  The entire context of this case is the restructuring of a Kazakhstan bank in Kazakhstan and the purchase by Panamanian corporations of subordinated debt issued by that bank outside of the United States and traded almost exclusively outside of the United States.  One percent of the Plaintiffs' purchases were made by the U.S. Individual Plaintiffs[1], who violated the transfer restrictions placed on those securities, restrictions which rendered their purchases null and void.  There is simply nothing alleged by Plaintiffs which would abrogate the sovereign immunity to which S-K Fund is entitled and Plaintiffs have been unable to make the factual allegations necessary to support an application of the United States securities laws.

In an effort to avoid dismissal, Plaintiffs have asserted a new basis for jurisdiction in their Opposition Memorandum to the Motion to Dismiss, relying on the first clause of 28 U.S.C. § 1605(a)(2), which creates an exception to immunity where the cause of action is based upon commercial activity carried on in the United States by the foreign state.  But the only allegations of commercial activity carried on in the United States by S-K Fund are the alleged

---

[1] The terms used herein have the same definitions as set forth in S-K Fund's Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint ("Def.'s Mem.").

distribution of the Information Memorandum to pre-existing creditors of BTA Bank in the United States (none of whom are Plaintiffs), and certain unspecified visits to the United States to "meet with investors and describe the bank's activities," without any allegation that any Plaintiff attended such meetings or were even aware of those meetings.  (Am. Compl. ¶19.)  Thus, none of Plaintiffs' claims are based upon the alleged commercial activity in the United States, which is the *sine qua non* for jurisdiction under Section 1605(a)(2).  As a result, that activity cannot be a basis for jurisdiction.

Plaintiffs have also altered their argument based on the "direct effects" clause of Section 1605(a)(2), apparently recognizing that most of the so-called direct effects alleged in the Amended Complaint are either acts in the United States rather than effects, and/or are irrelevant to the Plaintiffs' claims.[2]  But this new approach is unavailing as well.  Plaintiffs' assertion that they relied on alleged misstatements by S-K Fund to purchase Subordinated Notes in the United States is plainly deficient.  First, the corporate Panamanian Plaintiffs could not have relied on anything in the United States but could only have relied in Panama where they are incorporated and domiciled.  And their alleged purchases in the United States are irrelevant to any jurisdictional analysis.  The U.S. Individual Plaintiffs also cannot establish any direct effect based on their alleged reliance in the United States because S-K Fund never directed any statements to them.  Indeed, the only statements the Individual Plaintiffs claim to have relied upon are those contained in the Information Memorandum, and the allegations of the Amended Complaint make clear that, because the Individual Plaintiffs were not pre-existing creditors of BTA Bank at the time of the

---

[2]  Plaintiffs no longer seek to establish jurisdiction based on any of the following alleged direct effects, which were listed in paragraph 19 of their Amended Complaint: (i) the issuance of Subordinated Notes in the United States (which Plaintiffs now concede was not the case); (ii) the Notes were payable in New York; (iii) the Bank and S-K Fund represented that the Information Memorandum was effective in the United States; (iv) BTA Bank defaulted on the Notes such that payment was not made to Plaintiffs; and (v) S-K Fund established a subsidiary for purposes of marketing S-K Fund's investment in the Bank to investors in the United States.  In any event, none of these alleged effects or acts are sufficient to abrogate S-K Fund's immunity.  (*See* Def.'s Mem. at 16-23.)

2010 Restructuring, the Information Memorandum was not sent to them.  Thus, the only way these Plaintiffs could have received it is through the intervention of some third party, a fact which breaks the causal chain, rendering any subsequent effect in the United States indirect.  And, like the Panamanian Plaintiffs, any purchase in the United States is jurisdictionally irrelevant.

The only other "direct effect" alleged by Plaintiffs is that they suffered injury in the United States.  But the case law is clear that financial injury to foreign corporations, like the Panamanian Plaintiffs, is suffered at their place of incorporation, not the United States.  And it is also clear that financial injury to a U.S. person in the United States cannot satisfy the direct effect requirement of Section §1605(a)(2).

Moreover, Plaintiffs have failed to state a claim under the United States securities laws.  Despite three opportunities, Plaintiffs have not alleged facts sufficient to establish that they acquired the Subordinated Notes in a domestic transaction as required by *Morrison v. National Australia Bank, Ltd.*, 130 S. Ct. 2869 (2010).  Plaintiffs' only allegation is that their broker was located in the United States and the Second Circuit, as well as various district courts, has held that the location of the broker is insufficient to establish the existence of a domestic transaction.

Additionally, Plaintiffs fail to establish that they reasonably relied on the allegedly false and misleading statements.  Indeed, Plaintiffs made the vast majority of their purchases after BTA Bank had defaulted on its debt obligations and after the date Plaintiffs concede the "true facts" regarding the alleged misstatements and omissions were disclosed to the market.  Plaintiffs also do not allege with the particularity required by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1)-(3)(A), that S-K Fund acted with fraudulent intent.  Having failed to meet their pleading burden on multiple occasions, Plaintiffs' claims should be dismissed with prejudice.

## ARGUMENT

## I.    THERE IS NO EXCEPTION TO S-K FUND'S SOVEREIGN IMMUNITY

**A.    Plaintiffs' Claims Are Not Based on Any
Commercial Activity Carried on in the United States**

The FSIA, in the first clause of Section 1605(a)(2), provides an exception to foreign sovereign immunity in any case "in which the action is based upon a commercial activity carried on in the United States by the foreign state."  However, it is not sufficient merely to show that there was commercial activity by the foreign state in the United States. Plaintiffs must show that their cause of action is "based upon" that commercial activity.  A claim is based upon commercial activity when the activity, if proven, would entitle the plaintiff to relief under his theory of the case.  *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993). Determining whether a cause of action is "based upon" the alleged commercial activity "calls for something more than a mere connection with, or relation to, commercial activity."  *Id.* at 358.  "[I]t must be true that without the act, there would be no suit."  *Murphy v. Korea Asset Mgmt. Corp.*, 421 F. Supp. 2d 627, 648 (S.D.N.Y. 2005) (*quoting Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir. 2000)) (internal quotations and alterations omitted).

Plaintiffs now contend in their Opposition that the distribution of the Information Memorandum in the United States constitutes commercial activity in the United States that supports jurisdiction.  But none of their claims are based on this alleged activity.  Plaintiffs' allegation is that the Information Memorandum was sent to BTA Bank's pre-existing creditors.[3] (Am. Compl. ¶29.)  Only Atlantica and Baltica allege to have been creditors of BTA Bank who

---

[3]  There is no allegation in the Amended Complaint that the Information Memorandum was sent to anyone in the United States who was not a pre-existing creditor of BTA Bank.  Plaintiffs' assertion in the Opposition that BTA Bank provided the Information Memorandum to Plaintiffs' broker at the UBS Miami office (Opp'n at 19), is not supported by any competent evidence, and therefore should not be considered by the Court on a motion to dismiss.

acquired their initial investment in Subordinated Notes in connection with the 2010 Restructuring (Am. Compl. ¶¶7-8.)  Both are Panamanian corporations which would have received the Information Memorandum in Panama.  None of the other Plaintiffs, who made all of their alleged purchases of Subordinated Notes in the secondary market, were pre-existing creditors of BTA Bank and thus none of those Plaintiffs were sent the Information Memorandum.  Whether the Information Memorandum was sent to other investors in the United States, none of whom are parties to this action, is irrelevant to Plaintiffs' claims.  Indeed, even if Plaintiffs could prove that fact, it would not entitle them to any relief.  *See Nelson*, 349 U.S. at 356-58.  As their claims are not "based upon" this alleged activity, Plaintiffs' claims must be dismissed.

Plaintiffs' allegations regarding trips to the United States also fail to support an exception to immunity under Section 1605(a)(2).  The only allegations Plaintiffs make is that BTA Bank and S-K Fund representatives traveled to the United States to meet with unnamed investors and to describe unspecified activities of the Bank, and that BTA Bank and S-K Fund marketed the securities in the United States.[4]  (Am. Compl. ¶19.)  But Plaintiffs do not allege that they met with S-K Fund or BTA Bank in connection with any alleged purchase.  Indeed, there is no allegation that any Plaintiff ever met with S-K Fund or BTA Bank in the United States or elsewhere.  Nor is there any allegation that any Plaintiff was a target of, or was even aware of, the alleged visits or marketing activity.  Clearly, the Panamanian Plaintiffs, being in Panama and not in the United States, could not have been the target of this alleged activity.  Nor were the Individual Plaintiffs,

---

*See Blass v. Capital Int'l Sec. Grp.*, No. 99-cv-5738, 2001 WL 301137, at *3 (E.D.N.Y. Mar. 23, 2001) (unsupported statement by counsel in memorandum of law is "an inappropriate means of placing a factual issue before the Court") (*citing Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (dismissing claims for lack of subject matter jurisdiction under the FSIA where plaintiff's "uncorroborated averments" were insufficient to create a material issue of fact)).  Similarly, Plaintiffs' contention that the Information Memorandum was publicly available on BTA Bank's website at all relevant times is not supported by competent evidence and should be disregarded.  (Opp'n at 7.)  In any event, this assertion is irrelevant to the jurisdictional analysis it has nothing to do with any communications with Plaintiffs.

[4]  Other than for purposes of this motion, S-K Fund does not concede that any such activity actually occurred.

who were in fact prohibited by the resale restrictions on the Subordinated Notes from purchasing these securities.[5]  Thus, proving these allegations would not entitle Plaintiffs to relief.[6]

A foreign state's commercial activity in the United States will not support jurisdiction, even where a plaintiff's claim is "related to" that activity, unless the claim is "based upon" that activity.  The Second Circuit made this clear in *Kensington International Ltd. v. Itoua*, 505 F.3d 147 (2d Cir. 2007).  There was no dispute in that case that the foreign state defendant was engaged in commercial activity in the United States.  The defendant had made payments to a bank in New York and made oil shipments to customers in the United States.  Nevertheless, the Second Circuit held that the defendants were entitled to sovereign immunity because the plaintiff's RICO claims were not based on the alleged commercial activity in the United States, but were based on commercial activity occurring outside of the United States, specifically an alleged scheme in Africa and Europe to shield assets from creditors.  *Kensington Int'l Ltd.*, 505 F.3d at 156-57; *see also Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30, 34 (D.D.C. 2002) (dismissing action where plaintiffs' claims were not "based upon" the allegations of commercial activity:  "Even if proven, then, the allegation that Brazil fostered secondary markets would not 'entitle ... plaintiff[s] to relief under [their] theory of the case.'  To

---

[5]  Contrary to Plaintiffs' assertions, the Information Memorandum is clear that no resale of Subordinated Notes could be made to <u>any</u> U.S. Person other than a Qualified Institutional Buyer ("QIB").  (FFB Decl. ¶25 & Ex. 1 at 312.) Therefore the Individual Plaintiffs were not permitted to purchase Subordinated Notes and under the terms of the Information Memorandum their purchases are null and void.  (*Id.*)

[6]  Plaintiffs' assertion that the alleged marketing trips "helped maintain the artificially inflated value of BTA Bank's securities" (Opp'n at 21) appears nowhere in the Amended Complaint, is not supported by competent evidence, and therefore should be disregarded by the Court.  *See Blass*, 2001 WL 301137, at *3.  Furthermore, those assertions are insufficient to support jurisdiction because none of the Plaintiffs' claims are based upon that alleged marketing activity.  *See Nelson*, 349 U.S. at 356-58.

the contrary, the secondary market allegations 'are legally irrelevant to [plaintiffs'] right of recovery.'") (Citations omitted; alterations in original).[7]

       This case is remarkably analogous to *Murphy v. Korea Asset Management Corp.*, 421 F. Supp. 2d 627 (S.D.N.Y. 2005).  In *Murphy*, the plaintiff alleged that a foreign state defendant, which held a controlling stake in a Korean steel company, made several false representations regarding an auction of the company's assets which had been conducted in connection with the liquidation of that company in Korea.  *Murphy*, 421 F. Supp. 2d at 629.  The plaintiff alleged that the foreign state defendant had carried out commercial activity in the United States relating to his claims, including a face-to-face meeting with the plaintiff.  *Id.* at 635-36.  However, the plaintiff did not allege that any of the misrepresentations which were the basis of his claims were made at that meeting.  All of those misrepresentations were made outside of the United States.  Accordingly, even though the foreign state had carried on commercial activity in the United States, the court dismissed the claims because those claims were not based upon that commercial activity, but were based on events that occurred outside of the United States.  *Id.* at 648.

       The decision in *Murphy*, like the Second Circuit's decision in *Kensington*, makes clear that a plaintiff must do more than allege that its claims are somehow related to commercial activity carried on by the foreign state in the United States.  The claims must be "based upon" that commercial activity in the United States.  Without that strict nexus, there is no jurisdiction.  Plaintiffs have failed that test here.

---

[7]  Plaintiffs' reliance on *Shapiro v. Republic of Bolivia*, 930 F.2d 1013 (2d Cir. 1991), is entirely misplaced.  There the commercial activity upon which the plaintiff's claim was based was the issuance of a negotiable promissory note to a U.S. corporation in the United States which was held in escrow in the United States.  Significantly, the court focused on the fact that the defendant had not placed any restrictions on the negotiability of the note in the U.S.  *Shapiro*, 930 F.2d at 1019-20.  In this case, as Plaintiffs concede, the Subordinated Notes were not issued in the United States (Opp'n at 20, 22 n.3), and, in fact, significant restrictions were placed on the resale of those securities to prevent their sale to U.S. persons.  (*See* FFB Decl. Ex. 1 at 312-13.)

**B.**     **Plaintiffs Fail to Allege a Direct Effect in the United States**

          Plaintiffs also argue that the Court has jurisdiction because their claims are based

upon an act by S-K Fund outside the United States that caused a direct effect in the United States.[8]

As set forth above, Plaintiffs have abandoned all but two of the seven "direct effects" that they

alleged in the Amended Complaint.[9]  Plaintiffs now assert that (i) S-K Fund made statements

outside of the United States that they relied upon in connection with their purchases in the United

States, and (ii) Plaintiffs suffered losses in the United States.  Neither of these allegations

constitutes a "direct effect" under the FSIA.

          Plaintiffs argue that they relied on statements by BTA Bank and S-K Fund in

connection with their purchases of Subordinated Notes in the United States.  (Opp'n at 22.)  It is

difficult to parse whether Plaintiffs assert in the Opposition that their purported reliance occurred

in the United States or just that their purchases were made here.  Either way, Plaintiffs have not

established a direct effect in the United States.

          To the extent the corporate Panamanian Plaintiffs relied on any statement by BTA

Bank or S-K Fund, that reliance occurred in Panama.  *See Hargrave v. Oki Nursery*, 636 F.2d 897,

900 (2d Cir. 1980); *Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 435

(S.D.N.Y. 1998).  To the extent the Panamanian Plaintiffs allege that their placement of purchase

orders through a broker in Miami constitutes a direct effect in the United States, Plaintiffs are

conflating their own acts with a purported "direct effect."  Plaintiffs' placement of orders through a

broker in Miami was entirely fortuitous and entirely unrelated to S-K Fund.  Indeed, Plaintiffs

could have used a broker in Panama, in Switzerland or anywhere else in the world.  Their unilateral

---

[8]  The "based upon" requirement, discussed *supra* at 4, applies equally to the "direct effect" clause of Section 1605(a)(2).  *See Kensington*, 505 F.3d at 155-56.

[9]  Among other things, Plaintiffs no longer cite as a basis for jurisdiction the allegation that the Subordinated Notes were payable in New York, clearly acknowledging the authority in the Second Circuit that place of payment cannot constitute a direct effect when Plaintiffs' claims are not based on a failure to pay.  *See Gosain v. State Bank of India*, 414 Fed. Appx. 311, 313 (2d Cir. 2011).

choice of a broker in the United States has no legal significance to the jurisdictional analysis. *See Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993) (plaintiff's payment from bank account in the U.S. to obtain aircraft that had been detained in Nigeria was legally insignificant and did not constitute a direct effect in the U.S. because plaintiff's decision to pay from a U.S. bank account "was entirely fortuitous and entirely unrelated to" defendant's liability); *see also Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 80-81 (2d Cir. 2010).

The Individual Plaintiffs, who are U.S. residents, also cannot show that their reliance was a direct effect in the United States.  All of the Individual Plaintiffs' alleged purchases were made prior to May 25, 2011.  (Am. Compl., Ex. A.)  Thus, the Individual Plaintiffs could not have relied on the statements S-K Fund made to reporters in Kazakhstan in July 2011 and thereafter.  Nor could they have relied on any of the statements BTA Bank made in investor presentations in 2012 because those statements were made *after* the Individual Plaintiffs' purchases of the Subordinated Notes.  *Id.*; *See In re Merrill Lynch Auction Rate Secs. Litig.*, 765 F. Supp. 2d 375, 384 n.9 (S.D.N.Y. 2011).  Thus the only statements that some of the Individual Plaintiffs could have relied on are those contained in the Information Memorandum.[10]  However, the allegations in the Amended Complaint make clear that the Individual Plaintiffs were never sent the Information Memorandum by BTA Bank or S-K Fund.

Plaintiffs allege that BTA Bank distributed the Information Memorandum to its pre-existing creditors in connection with the 2010 Restructuring.  (Am. Compl. ¶29.)  But none of the Individual Plaintiffs were pre-existing creditors of BTA Bank.  Because they did not receive the Information Memorandum from BTA Bank, the Individual Plaintiffs must have received it from a third party (if at all).  Thus, the action of some unidentified third party, who must have

---

[10]  Plaintiff Jacques Gliksburg allegedly purchased Subordinated Notes on May 24, and 25, 2011 – *after* publication of the J.P. Morgan report that, according to Plaintiffs, disclosed "additional details concerning the Negative Carry Swap."  *See* Opp'n at 12; Jaffe Decl. Ex. A.  Thus, Gliksburg could not even have reasonably relied on the Information Memorandum in making those purchases.

provided the Information Memorandum to the Individual Plaintiffs, was an intervening factor between the foreign state's commercial activity and any reliance.  That intervening act broke the causal relationship and made any subsequent effect indirect.  *See Guirlando*, 602 F.3d at 74-75 (direct effect requires that "between the foreign state's commercial activity and the effect, there was no intervening element....  [T]he requisite immediacy is lacking where the alleged effect depends crucially on variables independent of the conduct of the foreign state.") (Internal quotations, citation and alteration omitted); *United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 33 F.3d 1232, 1238 (10th Cir. 1994) (plaintiff's interaction with third party was an "intervening factor" that prevented plaintiff's loss from being the "immediate consequence" of defendant's actions).

The Second Circuit has expressly rejected efforts to extend jurisdiction under the "direct effect" clause in circumstances where the alleged effect depends on the acts of third parties.  In *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230 (2d Cir. 2002), the court stated:

> Defining "direct effect" to permit jurisdiction when a foreign state's actions precipitate reactions by third parties, which reactions then have an impact on a plaintiff, would foster uncertainty in both foreign states and private counter-parties.  Neither could predict when an action would create jurisdiction, which would hinge on third parties' independent reactions and conduct, even if in individual cases, such as the one at bar, a particular effect might be foreseeable.  To permit jurisdiction in such cases would thus be contrary to the predictability interest fostered by the statute.

*Id.* at 238.

This analysis is particularly apt here, where the record shows that BTA Bank and S-K Fund made every effort to limit distribution of the Information Memorandum in the United States, and where stringent restrictions were placed on the transfers of the Subordinated Notes in the United States, including the prohibition on resale to any U.S. person (other than a QIB) in the

United States.  (*See* FFB Decl. Ex. 1 at 312.)  It is undisputed that the issuance of the Subordinated Notes was structured to take place entirely outside the United States, and the Subordinated Notes were issued through clearing systems in Europe.  (*See* Opp'n at 20, 22, n.3; FFB Decl. ¶¶ 3, 21, 22.)  To permit jurisdiction in these circumstances would clearly "be contrary to the predictability interest fostered by the [FSIA]."  *Virtual Countries,* 300 F.3d at 238.[11]

    To the extent the Individual Plaintiffs are alleging a direct effect based on their purchases in the United States, this argument suffers the same infirmity as the Panamanian Plaintiffs' claim.  The Individual Plaintiffs' decision to use a broker in the United States was an act of their own volition.  Like the Panamanian Plaintiffs, they could have used a broker anywhere in the world.  It does not constitute a "direct effect" of S-K Fund's act outside the United States.  As such, it is irrelevant to the jurisdictional analysis.  *See Antares Aircraft, L.P.*, 999 F.2d at 36.

    Thus all Plaintiffs are left with their original allegation:  that they suffered a "direct injury" in the United States, namely alleged losses on the value of the Subordinated Notes.  (Am. Compl. ¶15.)  This too fails to qualify as a "direct effect" for purposes of the FSIA.  As foreign corporations, the Panamanian Plaintiffs suffered their alleged losses in Panama, not the United States, and a financial loss outside of the United States cannot constitute a "direct effect in the United States."  *See Kensington Int'l Ltd.*, 505 F.3d at 158.  Likewise, to the extent the Individual Plaintiffs suffered financial loss in the United States, such loss is patently insufficient to constitute a "direct effect" under the FSIA.  *See id.*; *Guirlando*, 602 F.3d at 78-79.

    In sum, there is no basis for exercising jurisdiction over S-K Fund in this case.  S-K Fund is entitled to immunity and Plaintiffs' claims should be dismissed.

---

[11]  The exercise of jurisdiction in this case would also violate Due Process as unreasonable given the steps that were taken to limit all contact with the United States.  *See* Def.'s Mem. at 24-25.

II.     **PLAINTIFFS HAVE NOT MET THEIR BURDEN UNDER *MORRISON*
        OF ALLEGING A SECURITIES TRANSACTION IN THE UNITED STATES**

Plaintiffs may not rely on the conclusory allegation that they became irrevocably bound to purchase the Subordinated Notes in the United States.  Rather, as the Second Circuit has made clear, Plaintiffs "must allege facts suggesting that irrevocable liability was incurred or title was transferred within the United States."  *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012).[12]  Plaintiffs have failed to make such allegations.  The only factual allegation Plaintiffs make in support of their conclusory assertion that they incurred irrevocable liability in the United States to purchase the Subordinated Notes is that their broker was in the United States.  And as the Second Circuit has held, allegations concerning the location of the broker are insufficient as a matter of law.  *Id.*  Therefore, Plaintiffs have failed to meet their burden of alleging the existence of a domestic transaction.  *See In re Satyam Computer Servs. Ltd. Secs. Litig.*, No. 09 MD 2027, 2013 WL 28053, at *17 (S.D.N.Y. Jan. 2, 2013).  The Amended Complaint should be dismissed for failure to state a claim.

A.     **Atlantica and Baltica Have Not Alleged That They
        Acquired Their Initial Investment in a Domestic Transaction**

Only Atlantica and Baltica allege that they received Subordinated Notes in the 2010 Restructuring.  (Am. Compl. ¶¶7-8.)  The sole allegation that each makes to assert that the acquisition was in a domestic transaction is that they committed to the 2010 Restructuring by using a U.S. broker to forward their vote in favor of the Restructuring.  (*Id.*)  However, it is clear that their votes were cast in Panama where these corporate Plaintiffs are domiciled.  That vote was forwarded to the broker in Miami, who then sent it to a clearing system in Europe, which sent it to the Trustee in London to be recorded at the meeting of Euronoteholders in London.  (FFB Decl.

---

[12]  Plaintiffs contend that their only pleading deficiency is their failure to plead where title passed, misreading *Absolute Activist* and the cases that follow it.  (Opp'n at 34-35.)  Where there are no allegations as to where title passed, as is the case here, Plaintiffs must plead facts sufficient to determine where the parties became irrevocably bound to take or deliver the security.  Plaintiffs have not done so.

¶16 & Ex. 1 at 90-91, 370-74.)  In addition, every condition required to effectuate the 2010

Restructuring occurred abroad.  (FFB Decl. Ex. 1 at i, 90-91.)  The Euronoteholders' meeting was

in London, the Claimants' meeting was in Kazakhstan, and, following the approval of the 2010

Restructuring Plan by the Court in Kazakhstan, the issuance of the Subordinated Notes occurred

through clearing systems in Europe.[13]  (FFB Decl. ¶¶18-26 & Ex. 1 at i, 90-91.)  The fact that

Atlantica and Baltica decided to route their votes, which were cast in Panama and recorded in

London, through a broker in the United States, does not make their transactions domestic.  *See*

*SEC v. Benger*, No. 09 C 676, 2013 WL 593952, at *10 (N.D. Ill. Feb. 15, 2013) (shuttling of

documents back and forth by the escrow agent in the United States did not establish the

transactions as domestic).

   Moreover, Atlantica and Baltica did not incur any irrevocable liability by voting in

favor of the 2010 Restructuring.[14]  By communicating their commitment to the 2010

Restructuring, Atlantica and Baltica merely provided their instruction to the Trustee regarding the

meeting and vote by Euronoteholders on the 2010 Restructuring Plan held in May 2010 in

London.  (FFB Decl. ¶16.)  Atlantica and Baltica were not obliged to accept new securities in

connection with the 2010 Restructuring until the Plan was approved by the Euronoteholders and

---

[13]  The 2010 Restructuring and the steps required to effectuate it are described in detail in the Information
Memorandum.  Because Plaintiffs have specifically relied on the Information Memorandum in their pleading, it may
considered in the context of a 12(b)(6) motion to dismiss.  *See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer &
Co.*, 936 F.2d 759, 762 (2d Cir. 1991).

[14]  The Electronic Instruction Form that Plaintiffs cite supports this point.  The form on its face makes clear that it was
revocable in the event that the Bank amended, terminated or withdrew the Restructuring Plan:

> Electronic Instruction Forms from Beneficial Owners ... shall be irrevocable
> *provided however, that* in the event that the Bank, in its sole discretion, amends,
> terminates or withdraws the Restructuring Plan, at any time up to and including
> the applicable date on which the approval of the Restructuring Plan is announced,
> in a manner that is materially adverse to affected Euronoteholders in the opinion
> of the Trustee, <u>Euronoteholders shall be permitted, subject to the conditions set
> out herein, to revoke any Electronic Instruction Forms delivered in relation thereto
> for a period of two business days</u> . . . .

(FFB Decl. Ex. 1 at 91) (italics in original; underlining added).

by the Claimants and then ruled upon and approved by the Court in Kazakhstan overseeing the BTA Bank restructuring.  (*Id.*)  That did not occur until July 2010.  (*Id.* ¶ 20 & Ex. 7.)  If the Bank amended, terminated or withdrew the Restructuring Plan, Atlantica and Baltica could revoke their commitment to the Plan and they would not have been obligated to take the new securities.  (*Id.* Ex. 1 at 91-92.)  Similarly, if the Plan was not approved at the Euronoteholders' Meeting in London or the Claimants' Meeting in Kazakhstan, or if the Court in Kazakhstan did not give final approval, Atlantica's and Baltica's commitments to the 2010 Restructuring Plan would be of no force or effect.  (*Id.* at 323.)

When intervening events must occur before a party is irrevocably bound to purchase or sell a security and those events occur abroad, there is no irrevocable liability in the United States.  In *SEC v. Benger*, the court dismissed the Section 10(b) claims precisely for this reason.  *Benger*, 2013 WL 593952, at *13.  The stock purchase agreement in that case provided that the investor did not become bound to take the security until the issuer in Brazil accepted the investor's offer to purchase.  Thus, the court found that the parties incurred irrevocable liability in Brazil, not in the United States.  *Id.*

Plaintiffs' attempt to distinguish *Benger* on the grounds that it was decided on summary judgment.  But that is no distinction because here the facts surrounding the casting of the vote, the consequence of that vote and the multiple intervening events that had to transpire before Atlantica and Baltica incurred an obligation to acquire the Subordinated Notes, are undisputed.

In fact, Atlantica and Baltica were issued their initial interests in Subordinated Notes in Europe, as Plaintiffs now concede.  (Opp'n at 20, 22 n.3.)  Following the effectuation of the 2010 Restructuring, the pre-existing Euronotes that Atlantica and Baltica allegedly held were cancelled, and New Notes, including Subordinated Notes, were issued to Direct Participants with accounts in Euroclear Bank and Clearstream Banking, who held the Notes in Europe for their own

-14-

accounts or the accounts of their customers. (*See* FFB Decl. ¶21.) Far from being "meaningless," the fact that the Subordinated Notes were issued to these Plaintiffs outside of the United States is fatal to their claim that they acquired their initial investment in a domestic transaction.

**B.    Plaintiffs Have Not Alleged a Domestic Transaction With**
       **Respect to Their Alleged Secondary Market Purchases**

The only factual allegation Plaintiffs make connecting their purchases of Subordinated Notes on the secondary market to the United States is that their broker was located here. However, as set forth above, *Absolute Activist* and the cases following it establish that this allegation is insufficient to allege a domestic transaction. Plaintiffs do not allege how the broker filled their orders, who the seller was or how the transaction was ultimately consummated. Without providing these facts, Plaintiffs have only described only one-half of the transaction, which is plainly insufficient to meet the pleading standards of *Morrison*. *See Cornwell v. Credit Suisse Grp.*, 729 F. Supp. 2d 620, 624-25 (S.D.N.Y. 2010) (allegations that plaintiffs initiated orders from the U.S. are insufficient to meet *Morrison* pleading standards); *Elliott Assocs. v. Porsche Automobil Holding SE*, 759 F. Supp. 2d 469, 476 (S.D.N.Y. 2010) (when only the purchaser is located in the U.S. and the identity and location of the seller is not disclosed, there is no domestic transaction).

Plaintiffs make no allegation regarding how their purchase orders were filled. Instead, they argue that it was possible that the Subordinated Notes could have been acquired in a private, U.S. based transaction. (Opp'n at 34.) Whether or not that is true, Plaintiffs have the burden of alleging facts, which if true, would establish that they actually obtained the Subordinated Notes in a domestic transaction and they cannot meet that burden by relying on inferences and conclusory statements.

Moreover, Plaintiffs' description of how a U.S. based transaction could occur is flatly contradicted by the Information Memorandum and supporting documents.  Plaintiffs contend that the Subordinated Notes "could be sold to 'Eligible Investors' (defined as either Accredited Investors or QIBs) in private transactions in the United States" and "a U.S. clearing system, DTC, was available for that purpose."  (Opp'n at 34, 35.)  Plaintiffs ignore the transfer restrictions that provided that the Subordinated Notes could only be sold in the United States to QIBs in a transaction meeting the requirements of Rule 144A.  (FFB Decl. ¶¶24-26 & Ex. 1 at 312-13.)  Plaintiffs are also mistaken regarding the availability of DTC as a clearing system for transfers of Subordinated Notes.  As the documents issued in connection with the Information Memorandum make clear, DTC was removed as a clearing system and BTA Bank designated only Euroclear Bank and Clearstream Banking, both located in Europe, as clearing systems for the Subordinated Notes.  (FFB Decl. ¶26 & Ex. 9.)  And while interests in Subordinated Notes could be transferred on the books of a Direct Participant in the designated clearing systems or the books of a third party holding a beneficial interest in the Notes through a Direct Participant, Plaintiffs have not alleged that they acquired their interests in Subordinated Notes through either of these means or that, if they did, the transaction still did not occur abroad because the third party was not located abroad.

The undisputed fact is that the only exchanges on which the Subordinated Notes traded were in Luxembourg and Kazakhstan.  (FFB Decl. ¶23 & Ex. 10.)  If Plaintiffs' broker in fact acquired the Subordinated Notes on one of those exchanges, as appears likely, there was no domestic transaction.  *See Plumbers' Union Local No. 12 Pension Fund v. Swiss Reins. Co.*, 753 F. Supp. 2d 166, 178 (S.D.N.Y. 2010) (allegations that plaintiffs made purchase orders from Chicago and brokers executed orders from Chicago are insufficient to establish a domestic transaction when shares were ultimately purchased on a foreign exchange).  But it is not incumbent on S-K Fund to establish where Plaintiffs' broker acquired the Subordinated Notes.  It

-16-

is the Plaintiffs' responsibility to set forth specific allegations establishing that fact. Despite

multiple opportunities, Plaintiffs have failed to do so. The Court may not speculate to determine

whether Plaintiffs might have acquired the interests in a domestic transaction.

   The cases Plaintiffs cite are not to the contrary. In *Liberty Media Corp. v. Vivendi*

*Universal, S.A.*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012), there was no question where plaintiffs

incurred irrevocable liability. Both parties executed the Merger Agreement, which obligated each

to complete the exchange of Vivendi securities, in the United States. *Liberty Media Corp.*, 861

F. Supp. 2d at 269. Similarly, in *SEC v. Amerindo Investment Advisors, Inc.*, No. 05 Civ. 5231,

2013 WL 1385013 (S.D.N.Y. Mar. 11, 2013), the investors became bound to purchase U.S.

securities from the defendants when they transmitted purchase orders and transferred payments to

defendants' offices located in the United States. From these facts, it was apparent that the

investors became obligated in the United States to take the securities from defendants. *Amerindo*

*Inv. Advisors, Inc.*, 2013 WL 1385013, at *6.

   Here Plaintiffs purchased foreign securities that were only listed on foreign

exchanges.[15] Plaintiffs have only alleged where their broker was located. Relying on the location

of the broker is not enough. Plaintiffs' claims must be dismissed.

## III.  PLAINTIFFS HAVE NOT ALLEGED REASONABLE RELIANCE

   Plaintiffs' Opposition ignores the incontrovertible fact that Plaintiffs made over

80% of their alleged purchases of Subordinated Notes after January 2012, by which time BTA

Bank had announced both that it had defaulted on its debt obligations and that it was actively

considering a second restructuring. (Am. Compl. ¶57 & Ex. A; Pizzurro Decl., Ex. B at 8, 22-28.)

These alleged purchases occurred eight months after May 2011, by which time Plaintiffs concede

---

[15] Ninety-nine percent of the alleged purchases were by the Panamanian Plaintiffs, making this case, practically speaking, the classic "foreign-cubed" case. *See In re UBS Secs. Litig.*, No. 07 Civ. 11225, 2011 WL 4059356, at *5 (S.D.N.Y. Sept. 13, 2011) (foreign plaintiffs who purchased securities of foreign issuers on foreign exchanges failed to state a claim under Section 10(b)).

the alleged "true facts" regarding the allegedly false and misleading statements in the Information Memorandum were known to the market.[16]  Thus, for the vast majority of their purchases, Plaintiffs could not have reasonably relied on the Information Memorandum, issued almost two years earlier, or statements that S-K Fund made to reporters in Kazakhstan regarding the potential for a second restructuring.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 249 (1988) (plaintiffs cannot plead reliance based on purchases of securities made after corrective disclosures).

       In addition, those Plaintiffs who allegedly purchased Subordinated Notes prior to May 2011 could not have reasonably relied on any alleged failure to disclose the components of the alleged Negative Carry Swap in the Information Memorandum.  The disclosures in the Information Memorandum regarding the relationship between and among BTA Bank, S-K Fund and NBK were not "scattershot" as Plaintiffs contend, but were well organized, conspicuous and complete.  *See Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 340-41 (S.D.N.Y. 1993).  The Information Memorandum included, among other disclosures, a six-page section under the heading "The Role of Samruk-Kazyna and the NBK."  (FFB Decl. Ex. 1 at 174-79.)  Similarly, the information Plaintiffs claim was omitted from the 2012 Presentations regarding the Recovery Units was set forth in a section of the Information Memorandum entitled "Terms and Conditions of the Recovery Units."  (*Id.* at vi, 564-87.)  Because the terms of the Information Memorandum make clear that the Recovery Units could be accelerated upon the event of a default, Plaintiffs' allegations regarding alleged reliance on the 2012 presentations are insufficient.[17]

---

[16]  Plaintiffs also fail to allege loss causation for these purchases.  Plaintiffs have failed to allege that any decline in the value of Subordinated Notes after January 2012 was caused by S-K Fund.

[17]  Plaintiffs' reliance on *Affiliated Ute v. United States*, 406 U.S. 128 (1972), is unavailing.  Plaintiffs cannot be presumed to have relied on omissions when none of the facts were omitted.  *See In re Merrill Lynch Auction Rate Secs. Litig.*, 704 F. Supp. 2d 378, 397-98 (S.D.N.Y. 2010).

**IV.     PLAINTIFFS HAVE NOT ALLEGED SCIENTER WITH PARTICULARITY**

Plaintiffs do not allege facts showing a strong inference of fraudulent intent.

Conclusory allegations that S-K Fund knowingly concealed information are insufficient to allege

conscious recklessness or motive and opportunity.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d

1124, 1129 (2d Cir. 1994).  And contrary to Plaintiffs' assertions, the Information Memorandum

set forth in comprehensive fashion the facts regarding the Negative Carry Swap which Plaintiffs

allege were omitted, thereby undermining any inference of fraudulent intent.  *See Sable*, 819 F.

Supp. at 340-41.

Plaintiffs simply fail to allege a plausible motive for S-K Fund to make

misrepresentations or omissions.  With respect to the Negative Carry Swap, Plaintiffs fail to allege

why S-K Fund would risk its substantial investment in BTA Bank for the relatively modest

amounts Plaintiffs allege S-K Fund "siphoned" from the Bank.  Moreover, Plaintiffs concede that

the market was aware of the Negative Carry Swap by May 2011, so there was no motive to try to

conceal it after that date.

With respect to the statements S-K Fund made to reporters in 2011 regarding the

potential for a second restructuring, Plaintiffs do not allege what incentive S-K Fund would have

to make those misrepresentations.  Indeed, Plaintiffs have not made any allegation that S-K Fund

did not intend to assist BTA Bank if necessary.  *See Plumbers & Steamfitters Local 773 Pension*

*Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) ("a

complaint *must specifically identify* the reports or statements that are contradictory to the

statements made") (emphasis in original; internal quotations omitted).

With respect to the 2012 presentations regarding the Recovery Units, S-K Fund's

alleged motive, an interest to maintain market support for the Subordinated Notes, makes no sense

when there is no allegation S-K Fund would have profited from such efforts.  Moreover,

-19-

allegations of a defendant's desire to keep securities' prices high are insufficient to plead motive.

*See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198-201 (2d Cir. 2009).  In any event, the 2012 presentations discuss a second restructuring that would have almost certainly eliminated the Subordinated Notes and the Recovery Units.  (Pizzurro Decl., Exs. B, C.)  Each of Plaintiffs' alleged motives are implausible and do not give rise to a strong inference of scienter.[18]

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety.

Dated:  New York, New York
       July 1, 2013

Respectfully submitted,

CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP

_____/s/ Joseph D. Pizzurro_____
Joseph D. Pizzurro
Jonathan J. Walsh
101 Park Avenue
New York, NY 10178
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Defendant S-K Fund*

---

[18]  Plaintiffs argue it would be improper for the Court to assess the plausibility of its allegations on a motion to dismiss.  (Opp'n at 48.)  However, the Supreme Court has repeatedly instructed district courts to engage in such an analysis.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009).  In fact, district courts must compare the relative strengths of competing inferences of scienter on a motion to dismiss a securities fraud claim.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

15223567