USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/29/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
ATLANTICA HOLDINGS, INC. et al.,                                        :
                                                                        :
                                        Plaintiffs,                     :   12-CV-8852 (JMF)
                                                                        :   13-CV-5790 (JMF)
                -v-                                                     :
                                                                        :   MEMORANDUM OPINION
BTA BANK JSC, et al.,                                                   :   AND ORDER
                                                                        :
                                        Defendants.                     :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In these consolidated cases, investors in certain subordinated debt securities bring securities fraud claims against BTA Bank JSC ("BTA" or the "Bank") and the Sovereign Wealth Fund Samruk-Kazyna ("S-K Fund" or the "Fund"), both based in Kazakhstan, under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j, 78u. Relying on *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), the Bank and the Fund previously moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' claims on the ground that Plaintiffs failed to allege any domestic transactions. (*See* 12-CV-8852 Docket No. 15; 13-CV-5790 Docket Nos. 42, 43). In two Opinions, familiarity with which is presumed, the Court rejected Defendants' *Morrison* arguments, holding that Plaintiffs had adequately alleged that they had incurred irrevocable liability in the United States and therefore had engaged in domestic transactions within the meaning of *Morrison* and *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012). *See Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2 F.

Supp. 3d 550, 556-61 (S.D.N.Y. 2014) ("*Atlantica I*"); *Atlantica Holdings, Inc. v. BTA Bank JSC* ("*Atlantica II*"), No. 13-CV-5790 (JMF), 2015 WL 144165, at *8 (S.D.N.Y. Jan. 12, 2015).

Defendants now move, pursuant to Rules 12(c) and 56 of the Federal Rules of Civil Procedure, for judgment on the pleadings and summary judgment. (13-CV-5790 Docket Nos. 123, 129; 12-CV-8852 Docket No. 83).[1] Defendants' motion for summary judgment is based once again on the Supreme Court's decision in *Morrison*, and can be swiftly rejected. Most of Defendants' *Morrison* arguments are thinly repackaged versions of the arguments that the Court found wanting in its prior Opinions. In fact, in several instances, Defendants rely on the very same cases that they had relied upon in their earlier motions — cases that the Court had explicitly found distinguishable. (*See* 13-CV-5790 Docket No. 125 ("Defs.' Mem."), at 12, 18-19 (relying on *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014), and *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198 (2d Cir. 2014))). And while Defendants assert that discovery has "confirmed that Plaintiffs' allegations were inaccurate and their transactions were not 'domestic' under *Morrison*" (Defs.' Mem. 1-2), that is not the case. In its earlier Opinions, the Court held that Plaintiffs stated claims because they had adequately alleged that they had incurred irrevocable liability in the United States. *See Atlantica I*, 2 F. Supp. 3d at 560-61; *Atlantica II*, 2015 WL 144165, at *8-9. There is sufficient evidence in the record to support those allegations on summary judgment.

With respect to those Plaintiffs who obtained BTA's new debt securities as part of the Bank's 2010 restructuring, for example, discovery confirmed that they were, for all intents and

---

[1] On August 14 and August 15, 2017, Defendants filed additional motions seeking to dismiss the claims brought by three Plaintiffs — Atlantica Holdings, Inc., Baltica Investment Holding, Inc., and Blu Funds, Inc. — for lack of subject-matter and personal jurisdiction. (13-CV-5790 Docket No. 154; 12-CV-8852 Docket No. 111). Those motions are not yet fully submitted and will be addressed separately.

purposes, committed to their transactions when UBS Financial Services ("UBS") — from its office in Miami — submitted Electronic Instruction Forms on their behalf. (13-CV-5790 Docket No. 133 ("Pls.' SUMF") ¶¶ 14, 15; *see also* (12-CV-8852, Docket No. 18-1 ("Information Memorandum"), at 91 ("Electronic Instruction Forms from Beneficial Owners . . . shall be irrevocable . . . .")). And with respect to those Plaintiffs who purchased the debt securities on the secondary market, discovery confirmed that Plaintiffs placed binding orders with UBS in Miami; that UBS, in turn, identified counterparties through its office in New Jersey; and that, once willing sellers were located, UBS booked the transactions, at which point Plaintiffs were irrevocably bound to purchase the notes using funds located in their UBS accounts in Miami. (Pls.' SUMF ¶¶ 46-49).[2] In arguing otherwise, Defendants consistently focus — as they did in their motions to dismiss — on the fact that Plaintiffs' transactions were cleared or settled by Euroclear in Europe. (*See, e.g.*, Defs.' Mem. 14). But these arguments are beside the point. As the Court noted in its earlier Opinions, the *Absolute Activist* test is in the disjunctive: *Either* the passage of title (that is, clearing and settling) *or* the incurring of irrevocable liability in the

---

[2] Defendants make additional arguments with respect to what they call the "Vision Transactions" (Defs.' Mem. 16-17), but those arguments are no more valid. Among other things, in all of the "Vision Transactions," the Plaintiffs involved incurred irrevocable liability when UBS purchased the notes from EFG Capital International Corp., a broker-dealer also located in Miami. (Pls.' SUMF ¶¶ 94-95). At a minimum, there is a factual dispute with respect to whether Claudio Khamis, acting on behalf of the Plaintiffs involved in the "Vision Transactions," agreed to the transactions outside the United States. (*Compare* Pls.' SUMF ¶ 83(asserting that "Khamis initiated the Vision Transactions" in Chile "by placing orders to purchase Subordinated Notes" with the Chilean company, Administradora General de Fondos Vision Advisors S.A. ("Vision")), *with* 13-CV-5790 Docket No. 91 ¶ 13 ("At no time did I, or anyone else, place an order with Vision to purchase Subordinated Notes (or any other security) on behalf of the Entity Plaintiffs. Indeed, neither I nor any of the Entity Plaintiffs have ever had a securities account with Vision.")).

3

United States is sufficient to establish a domestic securities transaction. *See Atlantica I*, 2 F. Supp. 3d at 559.[3]

In their motion for judgment on the pleadings, Defendants raise two additional arguments: *first*, that the initial exchanges for the notes were not "purchases or sales" under Section 10(b)(5) of Exchange Act; and *second*, that Plaintiffs cannot demonstrate causation with respect to any losses arising from the notes obtained in connection with the 2010 restructuring. (Defs.' Mem. 21-23).[4] The first is without merit, as an exchange of one security for another constitutes a "purchase or sale" within the meaning of the Exchange Act — particularly where, as here, it is part of a major corporate restructuring requiring shareholder (or creditor) approval and causes a significant change in the investment and its associated risks. *See, e.g.*, *Gelles v. TDA Indus., Inc.*, 44 F.3d 102, 104 (2d Cir. 1994); *see also, e.g.*, *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 223 (5th Cir. 1994) ("[15 U.S.C. § 77b(3)] is generally

---

[3] Defendants also point to the fact that the notes at issue were "Regulation S designated transactions." (Defs.' Mem. 15). But Regulation S, which governs certain offers and sales of securities outside the United States, actually cuts against Defendants' position. In order to be considered an "offshore transaction" under Regulation S, "[a]n offer or sale of securities" must not be made to "a person in the United States." 17 C.F.R. § 230.902(h)(1). Here, Defendants explicitly issued the notes to United States persons as an exempt offering. (Information Mem. 310-12; 12-CV-8852, Docket No. 18 ("F-B Decl.") ¶¶ 23-27; 13-CV-5790 Docket No. 124 ("Defs.' SUMF") ¶ 32). In any event, the definition of an "offshore transaction" for Regulation S purposes has no bearing on whether Plaintiffs' transactions were domestic within the meaning of *Morrison*. *Cf. S.E.C. v. Tourre*, No. 10-CV-3229 (KBF), 2013 WL 2407172, at *9 (S.D.N.Y. June 4, 2013) (rejecting the defendant's argument "that what constitutes a domestic 'offer' under Section 17(a) [of the Securities Act of 1933] should conform with the requirements of Reg. S" for *Morrison* purposes).

[4] It is not entirely clear why Defendants raise these arguments by way of a Rule 12(c) motion instead of doing so as part of their summary judgment motion — particularly since doing so enabled Plaintiffs to argue that Defendants are seeking an improper second bite at the proverbial Rule 12 apple. (13-CV-5790 Docket No. 132 ("Pls.' Opp'n") 16-17). In any event, the Court need not and does not address whether Defendants' Rule 12(c) motion is procedurally proper.

interpreted to include exchanges of one security for another."); *United States v. Wernes*, 157 F.2d 797, 799 (7th Cir. 1946) (concluding that an offer to exchange beneficial trust certificates for limited partnership certificates constituted a "sale" for purposes of the Exchange Act). In arguing otherwise, Defendants rely exclusively on cases in which courts have held that share conversions as part of bankruptcy proceedings do not qualify as "purchases or sales" under Section 10(b). (Defs.' Mem. 21-23 (citing cases)). But the bankruptcy context is unique, as bankruptcy courts serve as stewards in the reorganization process, protecting minority interest holders and approving the reasonableness of any settlement. *Cf.* 15 U.S.C. § 77c(a)(10) (exempting the exchange of securities in connection with a court-administered bankruptcy from securities registration rules). And the 2010 restructuring was not a bankruptcy.[5]

Defendants' final argument — that Plaintiffs who obtained the notes as part of the 2010 restructuring cannot demonstrate causation because the restructuring would have been approved even without their votes (Defs.' Mem. 23) — also falls short. In support of that argument, Defendants rely on *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), and *Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000). (Defs.' Mem. 23-25). But each of those cases involved a "freeze-out merger" — in which the defendant owned a controlling percentage of the merging company and thus the outcome was a *fait accompli*. *See Va. Bankshares*, 501 U.S. at 1107 (finding that minority shareholders whose votes were not required for approval of a proposed freeze-out merger had failed to show that materially misleading representations in the proxy statement violating Rule 14a–9 caused their injury); *Grace*, 228 F.3d at 48 (extending the

---

[5] To be sure, the 2010 restructuring was purportedly administered by a court in Kazakhstan. (Defs.' Reply 9). But Defendants point to no authority for the proposition that a foreign court's approval of a restructuring precludes aggrieved minority debtholders from bringing a Section 10(b) claim.

*Virginia Bankshares* ruling to claims brought under § 10(b) and Rule 10b–5); *see also Miller v. Steinbach*, 268 F. Supp. 255, 270 n.24 (S.D.N.Y. 1967) ("The broad definition of a 'freeze-out' is any action taken by the persons in control of the corporation resulting in termination of a shareholder's interest."). By contrast, BTA and the S-K Fund had no say in whether the 2010 restructuring was approved by the Bank's creditors, and thus the restructuring was no *fait accompli*. *Cf. Lichtenberg v. Besicorp Grp. Inc.*, 43 F. Supp. 2d 376, 389 (S.D.N.Y. 1999) (finding causation to be established in a freeze-out merger "because the majority shareholders (i.e., the Director Defendants) did not collectively own the two-thirds of all outstanding shares necessary for approval of the merger"). Taken to its logical conclusion, Defendants' argument would mean that no minority shareholder could ever bring a securities fraud claim based on a merger or exchange because, by definition, the merger or exchange could have been approved anyway. Not surprisingly, Defendants cite no authority to support such a bold proposition.

The Court has considered all of Defendants' arguments and finds that they are without merit. Accordingly, and for the reasons stated above, Defendants' motions for summary judgment and for judgment on the pleadings are DENIED. Three housekeeping matters remain. First, the Court temporarily approved the parties' requests to file certain materials under seal or in redacted form, indicating that it would decide whether to do so permanently when deciding Defendants' motions. If either party believes that the papers should remain sealed or publicly filed only in redacted form, it shall file a letter brief, not to exceed five pages and no later than **September 12, 2017**, addressing the propriety of doing so. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (discussing the presumption in favor of public access). If no party files a brief justifying the maintenance of a particular document in redacted form, the parties shall publicly file un-redacted versions of the document on ECF **within two**

**business days**.  Second, the deadline for the parties to submit their proposed Joint Pretrial Order and related pretrial materials is hereby extended to thirty days after the Court's resolution of Defendants' pending motions to dismiss the claims brought by Atlantica Holdings, Inc., Baltica Investment Holding, Inc., and Blu Funds, Inc. for lack of subject-matter and personal jurisdiction.  *See supra* note 1.  Third, the parties should promptly meet and confer to discuss settlement and advise the Court if there is anything the Court can do to facilitate a resolution without trial, such as referral to the assigned Magistrate Judge for settlement purposes or referral to the Court-annexed mediation program.

    The Clerk of Court is directed to terminate 13-CV-5790, Docket No. 123.

    SO ORDERED.

Date: August 29, 2017
New York, New York

JESSE M. FURMAN
United States District Judge