UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
ATLANTICA HOLDINGS, INC. et al.,          :
:
                  Plaintiffs,          :
:
       -v-          :
:
SOVEREIGN WEALTH FUND SAMRUK-KAZYNA          :      12-CV-8852 (JMF)
JSC,          :
:
                  Defendant.          :
:
------------------------------------------------------------------X
:
ATLANTICA HOLDINGS, INC. et al.,          :
:      13-CV-5790 (JMF)
                  Plaintiffs,          :
:
       -v-          :
:
BTA BANK JSC,          :      OPINION AND ORDER
:
                  Defendant.          :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In these cases, familiarity with which is presumed, three American citizens (the "American Plaintiffs") and three Panamanian corporations (the "Foreign Plaintiffs" and, together with the American Plaintiffs, "Plaintiffs") bring securities-fraud claims against BTA Bank JSC ("BTA Bank" or the "Bank"), a bank in the Republic of Kazakhstan, and Sovereign Wealth Fund Samruk-Kazyna ("S-K Fund" or the "Fund"), which is owned and operated by the Republic of Kazakhstan and the majority shareholder of BTA Bank. In prior opinions, one of which was affirmed on interlocutory appeal, this Court held that it had subject-matter jurisdiction over the claims against the S-K Fund pursuant to the commercial-activity exception to the Foreign

Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605, and personal jurisdiction over both Defendants. *See Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC* ("*Atlantica I*"), 2 F. Supp. 3d 550, 556-59 & n.5 (S.D.N.Y. 2014), *aff'd*, 813 F.3d 98 (2d Cir.), *cert. denied*, 137 S. Ct. 493 (2016); *Atlantica Holdings, Inc. v. BTA Bank JSC* ("*Atlantica II*"), No. 13-CV-5790 (JMF), 2015 WL 144165, at *4-5 (S.D.N.Y. Jan. 12, 2015).[1] Defendants now seek to revisit those decisions (albeit only with respect to the claims brought by the Foreign Plaintiffs), citing — in one motion styled a motion for reconsideration (12-CV-8852, Docket No. 111) and another styled a "renewed" motion to dismiss (12-CV-8852, Docket No. 107) — the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of Cal.* ("*BMS*"), 137 S. Ct. 1773 (2017).

For the reasons explained below, both motions are DENIED.

## SUBJECT-MATTER JURISDICTION

First, S-K Fund's effort to revisit the question of subject-matter jurisdiction is plainly without merit. The "mandate rule," a branch of the law-of-the-case doctrine, generally requires a district court to "follow an appellate court's previous ruling on an issue in the same case." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). That is, barring exceptional circumstances, the rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis in original) (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)). A district court "may . . . possess some limited discretion to reopen" an issue decided by an appellate court "in very special situations." *United*

---

[1] In another opinion, not relevant here, the Court later denied Defendants' motions for summary judgment. *Atlantica Holdings, Inc. v. BTA Bank JSC*, No. 12-CV-8852 (JMF), 2017 WL 3731948 (S.D.N.Y. Aug. 29, 2017).

*States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993).  "At a minimum," however, "reopening would require a showing of exceptional circumstances — a threshold which, in turn, demands that the proponent accomplish one of three things: show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice."  *Id.*; *accord United States v. Garcia-Ortiz*, 792 F.3d 184, 189 (1st Cir. 2015); *United States v. Pileggi*, 703 F.3d 675, 681-82 (4th Cir. 2013); *see also Banco Nacional de Cuba v. Farr*, 383 F.2d 166, 178 (2d Cir. 1967).  As the First Circuit has put it, "[t]he litany of exceptional circumstances sufficient to sidetrack the [mandate rule] is not only short, but narrowly cabined."  *United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991).

In this case, S-K Fund makes no bones about the fact that it seeks to relitigate the precise issue decided by the Second Circuit on appeal — namely, whether Plaintiffs' claims fall within the "direct-effect clause" of the FSIA's commercial-activity exception.  *See* 28 U.S.C. § 1605(a)(2) (providing that a foreign state is not immune from suit in actions "based upon" the state's commercial activity outside the United States that has a "direct effect" in the United States); *Atlantica Holdings*, 813 F.3d at 106-16 (holding that Plaintiff's claims fall within the "direct-effects clause" of the commercial-activity exception).  What is more, the Fund does so by pressing arguments that were presented to, and explicitly rejected by, the Second Circuit.  The Second Circuit held, for example, that "the premise of SK Fund's argument — that Plaintiffs must demonstrate a direct effect *on themselves* in the United States to overcome FSIA immunity — is incorrect; the FSIA requires only that SK Fund's alleged misrepresentations had a direct effect *in* the United States."  813 F.3d at 111.  Calling that conclusion "wrong," S-K Fund here

puts forward the exact same premise yet again. (*See, e.g.*, 12-CV-8852, Docket No. 108 ("S-K Fund Mem."), at 14 ("[T]he 'direct effect' clause must be construed to require a 'direct effect' on the plaintiff in the United States.")). The mandate rule bars such efforts to reopen settled issues.

S-K Fund conspicuously fails to mention the mandate rule, let alone explain how its arguments can be squared with the rule. The closest it comes is to recite the truism that "subject matter jurisdiction is an issue that may be raised at any time." (*Id.* at 8). But to say that a party may "raise" the issue of subject-matter jurisdiction "at any time" is not to say that the party can *re*-raise the issue if a higher court has resolved it adversely. Citing an Eleventh Circuit decision in a footnote, S-K Fund also contends that "courts have granted renewed motions to dismiss for lack of subject matter jurisdiction under the FSIA even where the court of appeals previously ruled against the foreign sovereign defendant on the issue of jurisdictional immunity under FSIA." (*Id.* at 8 n.5 (citing *Guevara v. Republic of Peru*, 608 F.3d 1297, 1305 (11th Cir. 2010)). But the Eleventh Circuit's decision is the exception that proves the rule: It entertained the new challenge *only* after determining that its prior decision actually "left open" the "issues" raised in the new appeal as well as the ultimate "question of whether the district court had subject matter jurisdiction." *Guevara*, 608 F.3d at 1306-07; *see also Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 579-80 (4th Cir. 2015) (declining to apply the mandate rule to preclude a challenge to subject-matter jurisdiction despite a prior ruling that subject-matter jurisdiction existed where "the substantive questions" analyzed in the first ruling were "distinct" and "different from" the appellant's new arguments). S-K Fund does not cite, and this Court has not found, any case allowing a renewed challenge to subject-matter jurisdiction where, as here, the precise arguments were previously made to, and rejected by, a higher court. *That* court may have the prerogative to reconsider its own prior ruling, but this Court — as a lower federal court — plainly does not.

4

Nor does *BMS* allow S-K Fund to get its proverbial foot in the door. As noted, the Court arguably could revisit the issue of subject-matter jurisdiction, despite the Circuit's decision, if S-K Fund were able to "show that controlling legal authority has changed dramatically." *Bell*, 988 F.2d at 251. But it can do no such thing, for two independent reasons. First, *BMS* does not constitute "controlling" legal authority with respect to the question of subject-matter jurisdiction. For one thing, BMS addressed the issue of *personal* jurisdiction, not *subject-matter* jurisdiction. *See* 137 S. Ct. at 1779-80. For another, the Supreme Court limited its holding to state-court cases and the Fourteenth Amendment, and expressly left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. A decision leaving an issue open cannot be described as "controlling" with respect to that issue. *See, e.g.*, *Lyda v. FremantleMedia N. Am., Inc.*, No. 10-CV-4773 (DAB), 2013 WL 4756620, at *2 (S.D.N.Y. Aug. 26, 2013) (holding that a Second Circuit decision did not constitute an "intervening change in controlling law" where the Court "consciously avoided ruling" on the relevant issue). Second, and in any event, *BMS* did not change the law, and certainly did not do so "dramatically." Indeed, the Supreme Court itself stressed that the case involved only the "straightforward application . . . of settled principles." 137 S. Ct. at 1783; *see id.* at 1781 ("Our settled principles regarding specific jurisdiction control this case."). "[S]traightforward application . . . of settled principles" is not the stuff of which drama is made. Accordingly, *BMS* provides no cause to evade the mandate rule.

In fact, for those reasons, this Court could not grant S-K Fund the relief it seeks even if it were not constrained by the law of the case. As a lower court, this Court is required to follow Second Circuit precedent "unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will

5

almost inevitably be overruled by the Second Circuit." *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (internal quotation marks omitted). Thus, if the law-of-the-case doctrine did not apply (as it does), "[t]he precise question for this Court" would not be "whether, by its own analysis," *BMS* calls for a different result than that reached by the Second Circuit in the interlocutory appeal. *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004). Instead, it would be whether *BMS* "so conclusively supports that finding that the Second Circuit or the Supreme Court is all but certain to overrule" its prior decision. *Id.*; *see also Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) (noting that district courts and the Second Circuit itself are "required to follow" a Second Circuit decision, even if it is in "tension" with subsequent Supreme Court precedent, "unless and until that case is reconsidered by [the Second Circuit] sitting in banc (or its equivalent) or is rejected by a later Supreme Court decision"); *United States v. Wong*, 40 F.3d 1347, 1373 (2d Cir. 1994) ("[U]ntil the Supreme Court rules otherwise, the district court would be obliged to follow our precedent, even if that precedent might be overturned in the near future."). S-K Fund does not even come close to meeting that more lenient standard.

## PERSONAL JURISDICTION

Defendants are on firmer ground in seeking to revisit the question of whether exercising personal jurisdiction over them would be consistent with due process, if only because the Second Circuit did not reach the issue, *see Atlantica Holdings*, 813 F.3d 116-17 (declining to exercise pendent appellate jurisdiction over S-K Fund's challenge to personal jurisdiction), and because *BMS* actually involved personal jurisdiction.[2] Given that the Second Circuit has not spoken on

---

2   Defendants do not seek to revisit the Court's determination that it can exercise personal jurisdiction over S-K Fund as a statutory matter. Nor could they, as the FSIA provides that district courts have personal jurisdiction over any "foreign state" (including any instrumentality

the issue in this litigation, Defendants' arguments implicate "[t]he second and more flexible branch" of the law-of-the-case doctrine. *Quintieri*, 306 F.3d at 1225. As a general matter, that branch provides that a court should adhere "to its own decision at an earlier stage of the litigation." *Ben Zvi*, 242 F.3d at 95 (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d. Cir. 2000)). A court has discretion to revisit an issue, however, "for cogent or compelling reasons," such as "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (internal quotation marks omitted). Nevertheless, even when applying this "more flexible" rule, "[a] court should be loathe to revisit an earlier decision in the absence of extraordinary circumstances." *N. River Ins. Co. v. Phila. Reins. Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (internal quotation marks omitted).

In light of the Supreme Court's own observation that *BMS* involved the "straightforward application . . . of settled principles," 137 S. Ct. at 1783, Defendants face an uphill climb in arguing that the decision constitutes an "intervening change in law" sufficient to warrant reconsideration. They fall short. *BMS* involved a group of plaintiffs, some from California and some from other states, suing Bristol-Myers Squibb for harms caused by its drug, Plavix. *BMS*, 137 S. Ct. at 1778. On certiorari, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment prohibited the state courts from exercising personal jurisdiction over out-of-state plaintiffs whose claims had no connection to the defendant's conduct in California. *Id.* at 1781-84. The Supreme Court concluded that in order for a court to exercise specific

---

of a foreign state, such as S-K Fund) whenever one of the Section 1605(a) exceptions applies. *See* 28 U.S.C. § 1330(b); *see also Atlantica I*, 2 F. Supp. 3d at 559 n.5. The sole question raised by Defendants is whether the Court's exercise of personal jurisdiction over them is consistent with due process.

jurisdiction "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Id.* at 1781. Moreover, the Court stressed, "there must be an affiliation between the forum and the underlying controversy" *for each plaintiff*. *Id.* (internal quotation marks omitted). "[T]he nonresidents," the Court explained, "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California — and allegedly sustained the same injuries as did the nonresidents — does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.*

To the extent that the Due Process Clause applies here at all, (*see* 12-CV-8852, Docket No. 114 ("Pls.' Opp'n"), at 2 (citing *Corporacion Mexicana de Mantenimiento Integral v. Pemex-Exploracion y Produccion*, 832 F.3d 92 (2d. Cir. 2016), for the proposition that S-K Fund, as an instrumentality of a foreign state, is not entitled to due process)), it is the Due Process Clause of the Fifth Amendment, not the Fourteenth Amendment. Nevertheless, Second Circuit precedent "clearly establish[es]" that "the due process analysis for purposes of the court's *in personam* jurisdiction is basically the same under both the Fifth and Fourteenth Amendments. The principal difference is that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state may be considered." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 330 (2d Cir. 2016) (internal quotation marks, brackets, and citations omitted); *see also SEC v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) (noting that where, as here, the Fifth Amendment applies, "the minimum-contacts test . . . looks to contacts with the entire United States rather than with the forum state" (internal quotation marks omitted)). Thus, the question

in this case is whether each Defendant's "suit-related conduct [has] create[d] a substantial connection with" the United States. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Notably, the analysis "looks to the defendant's contacts with the forum . . . itself, not the defendant's contacts with persons who reside there." *Id.* at 1122; *accord BMS*, 137 S. Ct. at 1779 ("The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State." (citing *Walden*, 134 S. Ct. at 1121-23; and *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 806-07 (1985)).

Foreign Plaintiffs satisfy those requirements here. Indeed, their residencies notwithstanding, Foreign Plaintiffs are in no different a position, jurisdictionally speaking, from the American Plaintiffs — with respect to whose claims Defendants no longer raise a personal jurisdiction challenge. As the Court noted in its prior Opinion denying BTA Bank's motion to dismiss for lack of personal jurisdiction, Plaintiffs allege that BTA Bank "directed misstatements and omissions . . . at Plaintiffs and their agents" in the United States; knew that representations found in its Information Memorandum regarding the Bank's financial condition would be disseminated throughout the United States; mailed the Information Memorandum directly to Plaintiffs' brokers in Miami; offered securities for sale in the United States; denominated 80% of the securities issued in connection with the 2010 Restructuring in U.S. dollars; and allowed the Subordinated Notes to be offered in private, off-exchange transactions to facilitate transfers in the U.S. market. *Atlantica II*, 2015 WL 144165, at *4-5 (internal quotation marks omitted).[3] Further, all Plaintiffs — including Foreign Plaintiffs — allege that they purchased the

---

[3] Although personal jurisdiction must be established separately as to each Defendant, BTA Bank's statements and conduct may be attributed to S-K Fund for jurisdictional purposes given Plaintiffs' "control person" theory. *See Atlantica Holdings*, 813 F.3d at 107. Accordingly, the Court need not separately consider the Defendants here.

Subordinated Notes in off-exchange transactions on the U.S. market through their Miami brokers. (12-CV-8852, Docket No. 14 ("S-K Fund Compl."), ¶¶ 7-13, 31, 33; 13-CV-5790, Docket No. 32 ("BTA Compl."), ¶¶ 8-14, 36; *see* Pls.' Opp'n 2). *See Atlantica Holdings*, 2017 WL 3731948, at *2. In light of those allegations, Foreign Plaintiffs are indistinguishable from a nonresident plaintiff in *BMS* who could prove that she purchased Plavix from a pharmacy in California. Nothing in the Supreme Court's opinion suggests that the California courts could not have exercised personal jurisdiction with respect to such a plaintiff's claims, as the purchase of Plavix in California would have provided the requisite "connection between the forum and the specific claims at issue." *BMS*, 137 S. Ct. at 1781. So too here, Plaintiffs — including Foreign Plaintiffs — establish a sufficient "nexus" between their claims and Defendants' contacts within the United States. *See, e.g.*, *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 167 (2d Cir. 2010) (noting that the "nexus" between a plaintiff's claims and a defendant's conduct "merely requires the cause of action to 'relate to' defendant's minimum contacts with the forum"); *see also, e.g.*, *Walden*, 134 S. Ct. at 1125 ("Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.").

In arguing otherwise, Defendants contend that most of BTA Bank's alleged contacts with the United States represented "general conduct" unrelated to Plaintiffs specifically and thus has "no bearing on the jurisdictional analysis." (12-CV-8852, Docket No. 112 ("BTA Mem."), at 9-11, 13; *see also* 12-CV-8852, Docket No. 119 ("Joint Reply"), at 4-5, 7-8). A defendant's contacts with the relevant forum are not irrelevant, however, merely because they are directed at the forum "generally" rather than the plaintiff specifically. That is, the relevant inquiry focuses not on whether the defendant's contacts are specifically targeted at a plaintiff in the forum, let

10

alone on whether the defendant knows about the plaintiff's presence in the forum, but rather on whether a particular plaintiff's claims relate to the defendant's contacts with the forum. *See BMS*, 137 S. Ct. at 1786; *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (noting that specific jurisdiction is established where a "claim arises out of, or relates to, the defendant's contacts with the forum"). Here, as discussed, Plaintiffs establish the requisite nexus. In a similar vein, Defendants claim that, whatever minimum contacts BTA Bank may have had with the United States, its conduct was directed at third parties, not at Foreign Plaintiffs. (BTA Mem. 8, 12-13; Joint Reply 9-10). Those "third parties," however, include Plaintiffs' broker. (BTA Mem. 12-13). Moreover, the fact that Foreign Plaintiffs bought their Notes through their U.S.-based broker and not directly from BTA Bank does not put them in the position of a *BMS* nonresident plaintiff who bought Plavix from a "third party" out-of-state pharmacy that may or may not have obtained its product from a California-based wholesaler. *See BMS*, 137 S. Ct. at 1783. Instead, it puts them in the position of a nonresident plaintiff who purchased Plavix from a "third party" pharmacy in California, as to whom, again, the California courts could have exercised specific jurisdiction. *See id.* at 1781.

## CONCLUSION

For the reasons stated above, Defendants' motion for reconsideration and renewed motion to dismiss are DENIED.[4] Per the Court's Opinion and Order entered on August 29, 2017 (12-CV-8852, Docket No. 113; 13-CV-5790, Docket No. 158), the parties shall submit their proposed Joint Pretrial Order and related pretrial materials within thirty days of this Opinion and Order. Further, the parties should promptly meet and confer to discuss settlement and advise the

---

[4] In light of this conclusion, the Court need not and does not reach Plaintiffs' alternative arguments, including the argument that Defendants' motions are untimely under Local Rule 6.3. (Pls.' Opp'n 8-9).

11

Court if there is anything the Court can do to facilitate settlement, such as referral to the assigned Magistrate Judge for settlement purposes or referral to the Court-annexed mediation program.

The Clerk of Court is directed to terminate Docket Nos. 107 and 111 in 12-CV-8852, and Docket No. 154 in 13-CV-5790.

SO ORDERED.

Dated: February 15, 2018
      New York, New York

JESSE M. FURMAN
United States District Judge